## STATE v. DEONE CARLE BAILEY AND DONALD EUGENE BESTE.[1]

November 30, 1951.

No. 35,476.

---

[1]Reported in 50 N. W. (2d) 272.

*William W. Fink*, for appellants.

*J. A. A. Burnquist*, Attorney General, *Victor J. Michaelson*, Special Assistant Attorney General, *James F. Lynch*, County Attorney, and *Richard B. Ryan*, Assistant County Attorney, for the State.

LORING, CHIEF JUSTICE.

Defendants were convicted in the district court for Ramsey county of the crime of grand larceny in the first degree. Appeal was taken from the judgments.

At the trial, the prosecuting witness testified that he was attacked and robbed as he was walking west on College avenue in St. Paul from Wabasha street toward St. Peter street. It was about one o'clock in the morning of July 28, 1950. The witness testified that it was dark but not cloudy. At the intersection of Wabasha street and College avenue there are four street lights, but only two are left burning all night. Testimony in the record is to the effect that there is no light in the middle of the block on College avenue, but that there are lights at the intersection of St. Peter street and College avenue.

The witness testified that the attack took place about 15 or 20 feet from the corner of Wabasha street and College avenue near a driveway west of the St. Paul City Railway Company building. An employe of the St. Paul department of public works testified that this driveway is over 90 feet from the intersection.

The prosecuting witness testified that as he was walking two men jumped on him from behind; that one held him while the other slugged him; and that they continued beating him until he pretended to be knocked out. He said:

"A. I know he wore dark clothes. I looked at him so long from his slugging me; I had to recognize him.

"Q. Did the first man, Beste, strike you at all?

"A. Only when they had me down on the ground, it was all hands and feet and fists, and I don't know who was kicking and hitting me."

The witness had not known defendants prior to the time of the crime, but he testified that one of the men was wearing dark trousers and a yellow T shirt, and that the other wore dark clothes. After the crime, the witness went to the public safety building, where he gave the police a description of the two men. At the trial, the witness pointed out the defendants as the persons who committed the crime.

A police officer testified that he picked up the defendants the morning of the crime, after he had received a police radio broadcast describing the criminals. He said that defendants were both wearing T shirts and dark trousers; that one of the shirts was spattered with blood; and that one of the defendants had cuts on his hands. A detective lieutenant of the police force testified that the bloody shirt was returned to defendant to wear.

Other police officers testified that the defendants directed them to a house in front of which a billfold and identification papers, taken from the victim, were found in a clump of weeds, knee-high or a little higher. A 13-year-old boy testified that he had pulled the weeds from in front of the house a few days to a week and a half after July 4 and that only a few little weeds were left. A witness who lived in the house testified that there were some weeds left and indicated their height to the jury, saying, "About so high."

■ In their assignments of error, defendants urge that the verdicts are not sustained by the evidence. It is contended that, because the night was dark and because the prosecuting witness

testified erroneously as to the distance from the corner, his testimony and identification were not worthy of belief.

The testimony of the prosecuting witness identifying defendants was properly submitted to the jury. Courts are liberal in deciding whether such testimony is sufficient to uphold a conviction. See, e. g., State v. Findling, 123 Minn. 413, 144 N. W. 142, 49 L.R.A. (N.S.) 449; State v. Mason, 152 Minn. 306, 189 N. W. 452; State v. Farmer, 179 Minn. 516, 229 N. W. 789. Defendants requested an instruction as to the credibility of the prosecuting witness. The court charged as follows: "The defense contends that Mr. Duerr is mistaken in his identification of defendants." Defendants could not reasonably ask for more.

■ Defendants contend that the court should have instructed the jury that it was the duty of the state to produce all the evidence in its possession, and that from any inferred failure to produce evidence the jury should reason that such evidence would not have helped the state's case. Defendants cite no authority for this rule, and we find none. Rather, it would seem that such instruction would be improper for a court to make.

In this connection, defendants urge that the state should have introduced the blood-stained shirt in evidence. A police force detective testified that the shirt was returned to one of the defendants so that he would have something to wear. This was not refuted.

■ The credibility of the testimony as to the finding of the wallet was properly for the jury to decide.

■ Defendants contend that the court should have given an instruction on the weight to be given the circumstantial evidence. Where there is direct evidence of guilt, as well as circumstantial evidence, in the absence of a request, it is not error to omit such a charge. State v. Colcord, 170 Minn. 504, 212 N. W. 894.

The following proposed instruction, refused by the court, was the only one offered concerning circumstantial evidence:

"If any theory or hypothesis of the State is as consistent with innocence as with guilt, then you are to give the defendants the benefit since the State must prove the guilt beyond a reasonable

doubt and under those circumstances, you should bring in a verdict of not guilty."

This request to charge was properly denied because there was sufficient direct evidence to justify a verdict of guilty, and the requested instruction directed a verdict of not guilty if any part of the circumstantial evidence was found to be consistent with innocence. Blanton v. United States (8 Cir.) 213 F. 320, 326; cf. State v. Grunewald, 211 Minn. 74, 300 N. W. 206; State v. Schueller, 120 Minn. 26, 138 N. W. 937.

The judgments are affirmed, and the sentences imposed by the district court are ordered executed.

---

[1]Reported in 50 N. W. (2d) 275.